UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENNIE AMONSON,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>  Defendant. | No. 2:18-cv-00579 CKD<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1963, applied on September 24, 2014 for SSI, alleging disability beginning August 5, 2010, later amended to July 17, 2013. Administrative Transcript ("AT") 40, 296-307. Plaintiff alleged she was unable to work due to fibromyalgia, pain, stroke, polycythemia vera, depression, asthma, and chronic GERD. AT 215. In a decision dated

1

December 15, 2016, the ALJ determined that plaintiff was not disabled.[1] AT 40-54. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since July 17, 2013, the amended alleged onset date.
>
> 3. The claimant has the following severe impairments: status post cerebral vascular accident with occlusion of the right carotid artery, polycythemia vera, degenerative disk disease of the cervical and lumbar spine, and COPD/asthma.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. She can occasionally push/pull with her non-dominant left upper extremity; and can frequently reach with occasional overhead reaching, handling, fingering, and feeling with the left upper extremity. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to fumes, odors, dusts, and environments with poor ventilation. She cannot work at heights or around dangerous machinery.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on XX/XX/1963 and was 46 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

AT 43-53. The ALJ concluded that, based on plaintiff's September 24, 2014 applications for disability and disability insurance benefits and supplemental security income, plaintiff was not disabled under the Social Security Act. AT 54.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the opinion of a treating doctor; (2) the ALJ failed to fully develop the record; and (3) the ALJ failed to properly examine the vocational expert at the hearing.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff asserts that the ALJ improperly discounted the 2016 opinion of a treating neurologist, Dr. Thakur.

At the September 6, 2016 hearing on her disability application, plaintiff testified that she suffered multiple strokes in 2009 with residual loss of use of her left hand. AT 46, 67. She testified that after her third stroke in December 2009, her left hip started hurting and that she currently experienced constant pain on her left side. AT 67. On September 12, 2016, days after the hearing, neurologist Dr. Nicklesh Thakur wrote a one-page letter stating: "To whom it may concern: Ms. Amonson has suffered a stroke in 2009 and left arm and leg are disabled. She has no use of the left arm and is unable to stand or sit for prolonged periods." AT 928.

The record shows that Dr. Thakur personally treated plaintiff on at least one occasion. His

4

December 30, 2015 notes document an exam of plaintiff and a diagnosis of "left side spasticity/distonia and central pain syndrome" due to stroke, and "significant central pain syndrome which is likely worsened by the spasticity." AT 831-833. Dr. Thakur noted that "[o]ver 50% of the 40 minute office visit was spent in counseling and coordination of care" and that "[c]entral pain syndrome management and treatment options were discussed in detail." AT 833. Thus the undersigned considers Dr. Thakur a treating physician for purposes of this discussion.

The ALJ addressed Dr. Thakur's letter as follows:

> [T]he undersigned gives no weight to the letter [by Dr. Thakur] stating that the claimant is disabled and unable to sit or stand for prolonged periods. The issue of disability is reserved to the Commissioner and there is no evidence that the physician providing the letter performed an objective examination of the claimant.

AT 51.[2]

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different

---

[2] Because plaintiff focuses on Dr. Thakur's opinion, the court does not discuss the nearly identical letter of Dr. Tony Lai, issued on September 8, 2016. AT 927. The ALJ discounted Dr. Lai's opinion because his "letter expressly admits to no treatment relationship with the claimant" and because it was unsupported by clinical records. AT 51.

5

independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

First, the ultimate issue of whether plaintiff was disabled at any time during the alleged disability period is a determination reserved for the Commissioner. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."); 20 C.F.R. §§ 404.1527(d). Thus Dr. Thakur's statement that plaintiff's left arm and leg were "disabled" was not a medical opinion entitled to deference.

Second, Dr. Thakur's opinion as to functional impairment was contradicted by other medical opinions in the record. Multiple physicians found plaintiff more capable than Dr. Thakur opined. See AT 49-51; 148-150 (State agency physician Dr. Lockmiller); AT 207-208 (State agency physician Dr. Pancho); AT 768 (consultative examiner Dr. Chun).[3] Thus the ALJ had to provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Thakur's September 2016 letter, but she was not required to credit a conclusory opinion supported by minimal clinical findings.

Plaintiff takes particular issue with the ALJ's crediting of internist Dr. Richard Chun's opinion. Dr. Chun examined plaintiff in November 2014 and concluded that she had "no limitations with standing, sitting, or walking." AT 50; see AT 767-768. He further opined that she was "limited to occasional handling, fingering, and feeling with the left upper extremity, including reaching overhead and forward due to post thalamic pain left side and post stroke

---

[3] The ALJ also noted that plaintiff's primary care physician, Dr. Emily Harvey, repeatedly denied plaintiff's requests to complete disability forms, and that "[h]er requests [for referrals] were noted to seem to be motivated more by disability applications than by actual symptoms." AT 52; see AT 679-680, 698.

6

weakness. She should avoid heights and machinery due to post cerebral vascular accident; and should avoid chemicals, dust, fumes, and gases due to COPD/asthma." AT 50; see AT 768. The ALJ gave "significant weight to this opinion" as reflected in the RFC. AT 50.

Plaintiff argues that Dr. Chun examined plaintiff almost two years before the 2016 hearing date and was not privy to her subsequent medical records or any x-rays. However, Dr. Chun's examination of plaintiff fell squarely within the alleged period of disability, beginning in July 2013, and the ALJ reviewed and incorporated subsequent medical findings into the RFC analysis. See AT 51-52. Plaintiff does not address the numerous mild clinical findings considered by the ALJ[4], nor explain how such findings compelled a more restrictive RFC than a limited range of light work. See AT 48-50. Moreover, Dr. Thakur's opinion that plaintiff had "no use of the left arm and is unable to stand or sit for prolonged periods" lacks specificity and/or explanation.

Based on the foregoing, the court finds no error in the ALJ's rejection of Dr. Thakur's September 2016 letter as brief, conclusory, and unsupported by the record. The ALJ's statement that there was no evidence that Dr. Thakur ever examined plaintiff, while erroneous in light of the one-time examination noted above, constitutes harmless error given the conclusory nature of the opinion.

     B.   Duty to Develop the Record

Plaintiff argues that, after Dr. Chun issued his November 2014 report, the ALJ should have sent "additional … evidence to Dr. Chun for further opinion, but did not do so." (ECF No. 16 at 12.) Plaintiff asserts that Dr. Chun should have been asked to provide an updated report after reviewing plaintiff's "spasticity diagnosis and treatment" at Sutter Health in 2015 and 2016, including x-ray imaging done during this period. (Id.) See, e.g., AT 831 (diagnosing "spasticity affecting the left arm and leg").

Summarizing the post-2014 medical evidence, the ALJ noted:

---

[4] See, e.g., AT 48 (in April 2015 neurology exam, plaintiff's "strength was noted to be pretty good in the left arm and leg with only mild weakness; and normal hand dexterity was noted."); AT 49-50 (at January 2014 exam, "[m]uscle strength in the upper extremities was noted to be 5/5" with a normal range of motion in left shoulder and "she could grip, grasp normally and pinch weakly" with left hand despite some functional limitations).

> In April 2015, her strength was noted to be pretty good in the left arm and leg with only mild weakness; and normal hand dexterity was noted. She requested a walker at that time, but there is no indication it was prescribed. She reported left hip and lower back pain in September 2015, but no degeneration of the hips was noted on x-rays. She reported in January 2016 that she was able to walk only three or four minutes, but there is no indication of worsening.[5]

AT 52.

Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

Here, plaintiff does not explain how medical records generated after November 2014 would have changed Dr. Chun's assessment about her functional capacity. Although plaintiff continued to seek treatment in 2015 and 2016, she does not identify x-rays or other evidence that contradict Dr. Chun's original opinion or the RFC. Dr. Chun personally examined plaintiff during the alleged disability period, and plaintiff has not shown that the record was ambiguous or inadequate in the case.

C. Vocational Expert

Lastly, plaintiff asserts that the ALJ erred by relying on vocational expert (VE) testimony to determine that there at least one job she could perform.

The ALJ posed a hypothetical to the VE concerning a person who could perform light work with certain limitations, including the following:

> Assume such an individual could occasionally push or pull with the left non-dominant upper extremity. Such an individual could not operate any hand controls with the left non-dominant upper extremity. . . . Such an individual would frequently reach in front and laterally, occasionally overhead with the left non-dominant upper extremity. Such an individual could frequently handle with the left and occasionally finger with the left.

---

[5] Citing AT 798-918 (Sutter Health treatment records from 2015 and 2016) and AT 930-969 (Sierra Hematology & Oncology treatment records from 2014 through 2016).

8

AT 77 (emphasis added).

Plaintiff argues that this hypothetical misstated Dr. Chun's opinion as to plaintiff's limitations, which the ALJ gave significant weight. Dr. Chun found that plaintiff was limited to "<u>occasional handling</u>, fingering, and feeling with the left upper extremity." AT 50 (emphasis added), AT 768. Similarly, plaintiff's RFC limited her to "<u>occasional</u> overhead reaching, handling, fingering, and feeling with the left upper extremity." AT 47 (emphasis added).

However, the VE testified: "With the <u>occasional or frequent</u> handling at the light exertional level," such a person could work as a hand packager: a light, unskilled job with approximately 30,000 positions in the national economy. AT 77 (emphasis added). Thus any error in restating plaintiff's RFC for occasional left-hand handling was harmless. See <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error analysis applicable in judicial review of social security cases).

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;
2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted; and
3. Judgment is entered for the Commissioner.

Dated: June 19, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/amonson0579.ssi.ckd